[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 01-15432

_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 21, 2003
THOMAS K. KAHN
CLERK

D. C. Docket No. 99-00128 CV-DF-3

LISA WATSON,

Plaintiff-Appellant,

versus

BLUE CIRCLE, INC.,
WILLIE RANSOM, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

**(March 21, 2003)**

Before BIRCH and COX, Circuit Judges, and GEORGE[*], District Judge.

COX, Circuit Judge:

Lisa Watson appeals the district court's grant of summary judgment in favor

of Blue Circle, Inc. ("Blue Circle") on her hostile work environment sexual

_____

[*]     Honorable Lloyd D. George, United States District Judge for the District of
Nevada, sitting by designation.

harassment claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* The district court granted summary judgment based on its conclusion that Watson failed to establish a basis for holding Blue Circle liable for the alleged harassment. We conclude that there are genuine issues of material fact as to whether Blue Circle was placed on actual or constructive notice of several alleged incidents of harassment and as to whether Blue Circle took immediate and appropriate corrective action in response to several alleged incidents of which it had notice, and thus we reverse.

## I. BACKGROUND & PROCEDURAL HISTORY

Blue Circle is in the business of providing ready-mix concrete. It owns and operates approximately 75 manufacturing and distribution facilities throughout Georgia and Alabama. Blue Circle employs a number of concrete truck drivers, and the company hired Lisa Watson to such a position in November 1995 at its facility in Athens, Georgia. Watson was one of only three women hired as a concrete truck driver at the Athens facility.

Watson alleges that she was subjected to unwelcome sexual harassment by her co-workers and Blue Circle customers. She offers evidence regarding numerous alleged incidents of harassment, and many of these incidents involve Willie Ransom, a co-worker and truck driver. Watson claims that Ransom propositioned her and

offered her money to have sex with him in 1997 or 1998, saying such things as "[C]ome on, I know white girls do it for a few dollars, come on and go out with me," (R.1-53 at 52-53), and "[G]ive me some of that little kitty cat; I'll give you a few dollars" (R.1-53 at 58). Ransom also criticized Watson's work, including her ability to drive a cement truck, and other co-workers heard Ransom comment that "We don't need females here." (R.1-71 ¶ 4.) On one occasion, Ransom blew the air horn on his truck in a deliberate attempt to aggravate Watson, and when a supervisor learned of Ransom's conduct, the supervisor responded "I love it." (R.1-98 at 94.) During the fall of 1998, after Watson had been placed on light duty status, Ransom grabbed her by the wrists and shoved her. Later, Ransom, who does not smoke, asked Watson for a cigarette and began hitting Watson's breast underneath her left shirt pocket where she kept her cigarettes; after Watson implored him to stop, he laughed and walked away. In 1999, Ransom put his arms around her, rubbed her arms, and whispered "come on" in her ear. (R.1-68 ¶ 22.) And in late May 1999, at the State Road site, Ransom revved the engine of his truck and drove the truck directly at Watson and a male employee as they stood next to their trucks. Ransom stopped the truck a few feet in front of Watson and the other employee, and as Ransom and Watson drove their respective trucks back from the State Road site, Ransom tailgated Watson.

3

Arguably Watson's most egregious allegation of sexual harassment relates to an incident at the Alewine junkyard in early December 1998. Ransom allegedly tailgated Watson's truck during their trip to the Alewine junkyard, and after they dumped their loads of concrete, Ransom splashed water on Watson as they washed down their trucks. After Watson responded in similar fashion, Ransom picked up Watson and tried to throw her in the concrete they had dumped. Ransom then commented about Watson's weight. As Watson returned to her truck, Ransom asked Watson to go out with him in return for a couple of dollars. When Watson reached her truck, Ransom asked Watson if she needed help getting into her truck; although Watson refused his offer of assistance, Ransom walked up behind her, acted as though he was going to grab her buttocks, and brushed his hand across her buttocks.

Watson has also presented evidence that other Blue Circle employees have engaged in acts that Watson believes constitute sexual harassment. Peters, a driver-trainer, possessed a catalog that advertised sexual products and displayed pornographic pictures and showed pornographic films in the workplace. Billings, another Blue Circle driver, made sexual innuendos, discussed sexual acts in her presence, and criticized her driving. And a co-worker named Michael, whose last name is unknown, made sexual overtures and propositioned her.

4

Watson's allegations of harassment are not limited to Blue Circle employees; she also offers evidence that she was sexually harassed by Blue Circle customers. Watson offers evidence that Johnny, an employee of Terry Morris (a Blue Circle customer), harassed her on two separate occasions. On the first occasion, he grabbed Watson's hand and told her that he wanted to "eat her." (R.1-53 at 131-32.) On the second occasion, Johnny stuck out his tongue at Watson and mouthed the words that he wanted to "eat her." (R.1-53 at 133.) In another case, a subcontractor of Rooker Construction Company (another Blue Circle customer) cursed at Watson on three separate occasions in 1999, and Watson was informed that the subcontractor had made a sexually derogatory comment about her to his supervisor.

Watson brought this suit against Blue Circle,[1] asserting a claim for hostile work environment sexual harassment in violation of Title VII. Blue Circle moved for summary judgment on several grounds: Blue Circle argued that some of the incidents of which Watson complains are time-barred, that some alleged incidents were not based on Watson's sex, that some incidents standing alone were not sufficiently severe or pervasive to amount to sexual harassment, and that Watson failed to

---

[1]     Watson also named three Blue Circle employees in her lawsuit. She voluntarily dismissed her claims against Peters and Taras. Watson alleged supplemental state law claims against Willie Ransom, but the district court declined to exercise supplemental jurisdiction over these claims after it granted summary judgment to Blue Circle and dismissed her supplemental claims without prejudice. Although Watson's appeal names Ransom as a Defendant-Appellee, Watson has not asked us to reinstate her supplemental state law claims against Ransom. Consequently, we address only Watson's Title VII claim against Blue Circle in this opinion.

demonstrate a basis for holding Blue Circle liable for the alleged harassment. In ruling on Blue Circle's motion, the district court found that Blue Circle had actual notice of several incidents of harassment. With regard to the alleged incidents of harassment of which Blue Circle had actual notice, the court held that Blue Circle took immediate and appropriate corrective action in response to those incidents. The court also concluded that Blue Circle could not be charged with constructive notice of any other incidents of harassment because Blue Circle had established a valid and well-disseminated sexual harassment policy. Accordingly, the court concluded that Watson failed to establish a prima facie case of hostile work environment sexual harassment because she had not demonstrated a basis for holding Blue Circle liable for a hostile work environment, and the court granted summary judgment in favor of Blue Circle. Watson appeals.

## II. STANDARD OF REVIEW

We review the district court's grant of summary judgment de novo, applying the same familiar standards as the district court. *See Walker v. Prudential Prop. & Cas. Ins. Co.,* 286 F.3d 1270, 1274 (11th Cir. 2002).

## III.   ISSUES ON APPEAL

On appeal, Watson contends that the district court erred in granting summary judgment to Blue Circle because there are genuine issues of material fact as to whether Blue Circle took immediate and appropriate corrective action in response to those incidents of harassment of which the company had actual notice. Moreover, Watson argues that Blue Circle's harassment policy was not effective and, as a consequence, Blue Circle can be charged with constructive notice of incidents of which it reasonably should have known. Watson also contends that, because the harassment was so severe and pervasive, Blue Circle reasonably should have known of several alleged incidents of harassment.

Blue Circle, on the other hand, contends that some of the incidents about which Watson complains are time-barred because they occurred more than 180 days before she filed a Charge of Discrimination with the EEOC. In addition, Blue Circle contends that, regardless of the timeliness of Watson's claims, it took immediate and appropriate corrective action in response to each incident of which it had actual notice, and that it cannot be charged with constructive notice of any other alleged incidents of harassment.

7

## IV. DISCUSSION

To establish a prima facie case of hostile work environment sexual harassment, Watson must show: (1) that she belongs to a protected group; (2) that she has been subject to unwelcome sexual harassment; (3) that the harassment was based on her sex; (4) that the harassment "was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment"; and (5) a basis for holding the employer liable. *Mendoza v. Borden, Inc.,* 195 F.3d 1238, 1245 (11th Cir. 1999) (en banc). In order to establish a basis for holding Blue Circle liable for a hostile work environment, Watson must show that Blue Circle had notice of the alleged harassment and failed to take immediate and appropriate corrective action. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1278-80 (11th Cir. 2002); *see also Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 647 (11th Cir. 1997) (requiring employers to take "prompt remedial actions" in response to harassment).

The district court granted summary judgment to Blue Circle based solely on its conclusion that Watson failed to establish a basis for holding Blue Circle liable for harassment. Thus, we will consider only whether the court erred with respect to its conclusion on the employer liability issue; we should not be understood to express any opinion as to the remaining elements of Watson's hostile work environment

8

sexual harassment claim. *See Breda v. Wolf Camera & Video*, 222 F.3d 886, 889 n.3 (11th Cir. 2000) (addressing only whether the plaintiff established employer liability after the district court granted summary judgment to the defendant solely on that ground).

To evaluate Watson's arguments on appeal, we must first address Blue Circle's contention that some of the alleged incidents of sexual harassment are time-barred. After we identify any incidents that are not time-barred, we must consider whether Blue Circle can be charged with actual or constructive notice of such incidents. Finally, we must consider whether the district court correctly determined, as a matter of law, that Blue Circle took immediate and appropriate corrective action in response to those non-time-barred incidents of which it had notice.

## A. STATUTE OF LIMITATIONS

Because Georgia is a non-deferral state, Watson was required to file a Charge of Discrimination within 180 days of the alleged unlawful employment action. *See* 42 U.S.C. § 2000e-5(e)(1). Watson filed her charge of discrimination on December 14, 1998; consequently, any incidents after June 16, 1998, occurred within the 180-day filing period. Blue Circle concedes that six incidents – the shoving incident, the cigarette incident, the Alewine junkyard incident, Ransom's conduct when he whispered "come on" in Watson's ear, the State Road incident, and the Rooker

9

construction site incident – occurred after June 16, 1998. Blue Circle contends that the remaining incidents (Ransom's conduct before June 16, 1998, and the incidents involving Peters, Michael, Billings, and Johnny) are time-barred. In response, Watson contends that these incidents are part of a pattern or series of discriminatory acts and are therefore preserved by the continuing violation doctrine.

In *National Railroad Passenger Corp. v. Morgan*, ___ U.S. ___, 122 S. Ct. 2061 (2002), the Supreme Court rejected the application of the continuing violation doctrine in hostile work environment cases. *See Shields v. Fort James Corp.*, 305 F.3d 1280, 1281-82 (11th Cir. 2002). Prior to *Morgan*, we distinguished between the present consequences of a one-time violation and the continuation of the violation into the present to determine whether a court could consider acts that occurred before the filing period for the purposes of determining liability. *See, e.g.*, *Thigpen v. Bibb County, Ga., Sheriff's Dep't*, 223 F.3d 1231, 1243 (11th Cir. 2000). In *Morgan*, however, the Supreme Court simplified the limitations inquiry in hostile work environment cases. The Court instructed that a hostile work environment, although comprised of a series of separate acts, constitutes one "unlawful employment practice," and so long as one act contributing to the claim occurs within the filing period, "the entire time period of the hostile environment may be considered by a

10

court for the purposes of determining liability." *Morgan*, ___ U.S. at ___, 122 S. Ct. at 2074.

Accordingly, Watson's numerous allegations of harassment constitute an allegation of one unlawful employment practice: the hostile work environment created by the harassing conduct of Blue Circle's employees and customers.[2] Because Blue Circle concedes that six alleged incidents of harassment occurred within the filing period, the entire time period of the harassment may be considered for the purposes of determining liability. Therefore, we conclude that Ransom's conduct before June 16, 1998, and the alleged conduct of Johnny, Michael, and Billings are not time-barred.

In contrast, we conclude that Peters's allegedly harassing conduct cannot be considered for the purposes of determining Blue Circle's liability. In *Morgan*, the Supreme Court noted that a Title VII plaintiff cannot recover for acts that occurred before the filing period if such acts are no longer part of the same hostile work environment claim because of "certain intervening action by the employer." ___ U.S. at ___, 122 S. Ct. at 2075. Around December 1996, Watson informed Taras (her

---

[2]   An employer may be found liable for the harassing conduct of its customers if the employer fails to take immediate and appropriate corrective action in response to a hostile work environment of which the employer knew or reasonably should have known. *See, e.g.*, *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1073-74 (10th Cir. 1998); *Folkerson v. Circus Circus Enter., Inc.*, 107 F.3d 754, 756 (9th Cir. 1997). We conclude that, in the circumstances of this case, Watson's allegations against her co-workers and Blue Circle's customers collectively constitute an allegation of a single unlawful employment practice.

11

supervisor) and Randy Davis (Taras's supervisor) that Peters had displayed lewd photographs in her presence in the workplace and that she had observed Peters showing pornographic films to co-workers at Blue Circle's Athens facility. Watson also informed them of inappropriate activity that allegedly occurred when Watson visited Peters's house. In response to her complaints, Davis and John Richardson (a Blue Circle employee in the Human Resources department) met with Watson. According to the uncontradicted deposition testimony of Richardson and Peters, Richardson inspected Peters's locker, wallet and truck following the meeting with Watson and ordered Peters to dispose of pornographic material that was discovered. According to her deposition, Watson did not have any problems with Peters thereafter and did not contact Davis or Richardson again regarding Peters. We conclude that this "intervening action" by Blue Circle renders Peters's conduct no longer part of Watson's hostile work environment claim. Therefore, Peters's conduct cannot be considered as a basis for Watson's claim in this case.

## B. NOTICE

When, as in this case, the alleged harassment is committed by co-workers or customers, a Title VII plaintiff must show that the employer either knew (actual notice) or should have known (constructive notice) of the harassment and failed to take immediate and appropriate corrective action. *Breda*, 222 F.3d at 889. Actual

notice is established by proof that management knew of the harassment. *Miller*, 277 F.3d at 1278. When an employer has a clear and published policy that outlines the procedures an employee must follow to report suspected harassment and the complaining employee follows those procedures, actual notice is established. *Breda*, 222 F.3d at 889; *Coates v. Sundor Brands, Inc.,* 164 F.3d 1361, 1364 (11th Cir. 1999). Constructive notice, on the other hand, is established when the harassment was so severe and pervasive that management reasonably should have known of it. *Miller*, 277 F.3d at 1278.

1.  Actual Notice

The district court found that Blue Circle had actual notice of several incidents of harassment because Watson informed Taras, the individual designated for receiving complaints of harassment pursuant to Blue Circle's anti-harassment policy, of the allegedly harassing conduct. In particular, the court concluded that Blue Circle was placed on actual notice of the incidents at the Alewine junkyard, at the State Road site, at the Terry Morris site, and at the Rooker construction site. We agree with the district court's conclusion in this regard, and Blue Circle does not argue that the company was not placed on notice of these alleged instances of sexual harassment.

We also conclude that there are genuine issues of material fact as to whether Blue Circle had actual notice of several other alleged incidents of harassment.

Watson has presented evidence that, if believed by a jury, could establish that Taras had actual notice of Ransom's propositions in 1997 or 1998, the air horn incident, and the shoving incident. Moreover, a jury could reasonably infer from the evidence adduced by Watson that Taras saw Watson cry as a result of Ransom's conduct, a co-worker told Taras that Watson was upset and suffered stomachaches and headaches as a result of Ransom's conduct, at least one co-worker suggested that Taras separate Watson and Ransom, Taras was overheard saying that he would tell his supervisor about Ransom's conduct towards Watson, and Taras was overheard saying that he did not want to "mess with" Ransom's conduct towards Watson. Furthermore, there are genuine issues of material fact as to whether Blue Circle had actual notice of the alleged incidents involving Michael and Billings.

2.    Constructive Notice

While we conclude that Blue Circle had actual notice of several incidents of sexual harassment (and may have had actual notice of other incidents), Watson urges us to hold that Blue Circle had constructive notice of several additional instances of alleged harassment. Relying on *Farley v. American Cast Iron Pipe Co.*, 115 F.3d 1548 (11th Cir. 1997), the district court concluded that Blue Circle could not be placed on constructive notice of any other alleged harassment because Blue Circle has a "valid and well-disseminated sexual harassment policy" that was "communicated

14

to staff" and any harassment ceased after Watson complained to Taras. (R.1-90 at 13-14); *see Farley*, 115 F.3d at 1553 (concluding that the existence of a valid, effective, well-disseminated policy prohibiting sexual harassment precluded a finding of constructive notice). Because we believe that genuine issues of material fact exist that preclude the district court from finding that Blue Circle has an effective sexual harassment policy, we conclude that the district court erred in holding that, under *Farley*, Blue Circle could not be charged with constructive notice of other instances of alleged harassment.

The holding in *Farley* was compelled by the specific facts in that case, and we conclude that the circumstances in *Farley* are distinguishable from the circumstances in Watson's case. In *Farley*, the company's sexual harassment policy was unequivocally communicated to employees, the policy offered several avenues for lodging a grievance, and the company's thorough investigation of complaints indicated that the company took complaints seriously and adhered to its own policies. 115 F.3d at 1553. Because the employer in *Farley* "developed and promulgated an effective and comprehensive sexual harassment policy, aggressively and thoroughly disseminated the information and procedures contained in the policy to its staff, and demonstrated a commitment to adhering to this policy," the court concluded that the employer could not be charged with constructive knowledge of alleged instances of

15

sexual harassment. *Id.* at 1554. In this case, by contrast, Watson contends that Blue Circle did not have an effective sexual harassment policy.

We agree with Blue Circle that there are no genuine issues of material fact as to the dissemination of Blue Circle's sexual harassment policy to Blue Circle staff and employees. Watson received a copy of Blue Circle's employee handbook, which described Blue Circle's harassment policy, and she does not present any evidence to support the proposition that other employees did not receive a copy of the policy. But the fact that Blue Circle's policy was well-disseminated, standing alone, is not sufficient to entitle Blue Circle to rely on the policy's procedural framework to remain apprised of the conduct of Blue Circle employees. Under *Farley*, the employer's harassment policy must also be valid and effective in order to preclude a finding of constructive notice. 115 F.3d at 1553. "Where there is no policy, *or where there is an ineffective or incomplete policy*, the employer remains liable for conduct that is so severe and pervasive as to confer constructive knowledge." *Id.* at 1554 (emphasis added). And in this case, unlike in *Farley*, the Title VII plaintiff has presented evidence to challenge the effectiveness of the company's sexual harassment policy.

As we discuss in greater detail below, Watson has presented evidence that raises genuine issues of material fact as to whether Blue Circle takes harassment

16

complaints seriously. She presents evidence that calls into question whether Blue Circle adequately investigates and responds to allegations of sexual harassment in the workplace. In sum, Watson challenges the effectiveness of Blue Circle's anti-sexual harassment policy and, based on the evidence Watson presents, a reasonable jury could conclude that Blue Circle does not adequately investigate and respond to harassment complaints. Accordingly, we conclude, given the specific facts of this case, that there are genuine issues of material fact regarding the effectiveness of Blue Circle's sexual harassment policy, and consequently the district court erred when it concluded that *Farley* precluded Blue Circle from having constructive knowledge of additional instances of alleged harassment.

Having determined that *Farley* does not preclude Blue Circle from being charged with constructive notice, we further conclude that there are genuine issues of material fact regarding constructive notice. Watson has produced evidence to create genuine issues of material fact as to whether Blue Circle reasonably should have known of alleged instances of sexual harassment.

## C. IMMEDIATE AND APPROPRIATE CORRECTIVE ACTION

If an employer has actual or constructive notice of harassment but takes immediate and appropriate corrective action, the employer is not liable for the harassment. *See Miller*, 277 F.3d at 1280; *Fleming v. Boeing Co.*, 120 F.3d 242, 246

n.4 (11th Cir. 1997). Although the district court concluded that Blue Circle took immediate and appropriate corrective action in response to each incident that Watson reported, we conclude, after a thorough review of the record, that there is evidence from which a reasonable jury could conclude that Blue Circle failed to take immediate and appropriate corrective action.[3]

The Alewine junkyard incident is illustrative of the factual disputes that exist regarding Blue Circle's response to alleged harassment. Viewing the evidence in the light most favorable to Watson, Watson initially reported the events at the Alewine junkyard to a batch worker and a substitute supervisor because her regular supervisor, Taras, was out on vacation. Watson also delivered a written summary of these incidents to Taras's direct supervisor, Roach.

After receiving Watson's written report, Roach met separately with Ransom and Watson to discuss the situation. Roach testified that during his meeting with Ransom, he asked Ransom about propositioning Watson with money and touching her buttocks. Ransom, on the other hand, testified that Roach merely asked him for his side of the story and then reprimanded him for "horseplaying," but Ransom's testimony does not indicate that Roach questioned him about the accusations of

---

[3] In fact, after reviewing the record, we have found it impossible to construct an undisputed version of the circumstances underlying Watson's hostile work environment sexual harassment claim.

18

propositioning and inappropriate touching. In fact, although the written report that Watson submitted to Roach specifically mentioned the inappropriate touching, Ransom testified: "I recall asking [Roach] did [Watson] say that I touched her in any kind of inappropriate way, and his answer was no." (R.1-74 at 72.) Moreover, Roach's report summarizing his meeting with Ransom makes no reference to Ransom's alleged offer of money.

After listening to both versions of what transpired at the Alewine junkyard, Roach determined that Watson and Ransom merely were "horseplaying" with each other, and he instructed them not to engage in such conduct in the future. In addition, Roach asked both employees if they were willing to continue working with each other, to which both employees responded "yes," and he instructed them to contact him or another supervisor if they had any problems with one another in the future. Other than this reprimand, neither Watson nor Ransom was disciplined. Ransom's testimony, when viewed in the light most favorable to Watson, suggests that Roach did not make the purpose of his meeting with Ransom clear and that Roach failed to instruct Ransom to refrain from sexually harassing Watson. According to Ransom, Roach simply informed him that he should refrain from horseplaying, teasing, and joking with Watson. On this record, a reasonable jury could conclude that Roach

19

failed to adequately investigate and respond to the Alewine junkyard incident, arguably Watson's most egregious allegation of sexual harassment.

Moreover, after meeting with Watson and Ransom, Roach spoke with Marci Creath in Blue Circle's Human Resources department about the Alewine junkyard incident. When asked whether he reported the touching and propositioning incidents to Creath, however, Roach responded that he "honestly [could not] recall the conversation," and that he would "be guessing" if he answered the question. (R.1-75 at 41-42.) Roach further testified that, upon Taras's return from vacation, he informed Taras about the incident. According to Roach, however, he could not recall whether he informed Taras about the allegations of inappropriate touching or propositioning. Roach also testified that he could not recall whether he provided Taras or Creath with any of the documentation that had been created regarding the incident. In light of this testimony, a reasonable jury could also find that Roach failed to inform anyone else at Blue Circle about Watson's most egregious allegation of harassment. Accordingly, on this record, we cannot say that there are no genuine issues of material fact as to whether Blue Circle took immediate and appropriate corrective action in response to Watson's allegations of sexual harassment.

There are factual disputes with respect to other incidents as well. For example, Watson complained to Taras about an incident that allegedly occurred at a

construction site where Watson delivered concrete. Watson testified that she asked Taras not to send her back to the construction site because a worker there grabbed Watson's hand and told her that he wanted to "eat her." (R.1-53 at 133-34.) According to Watson, Taras laughed at her request and continued to send her to the site. Taras testified that he could not remember whether he continued to send Watson to the site. Nevertheless, the district court concluded that, because the construction worker was absent from the site when Watson made subsequent deliveries, "the Court feels that . . . action was taken." (R.1-90 at 8-9.) While this might be a reasonable inference from the record, the court improperly drew it in favor of Blue Circle.

## V. CONCLUSION

After viewing the evidence in the light most favorable to Watson, we conclude that there are genuine issues of material fact as to (1) whether Blue Circle had actual notice of several alleged incidents of harassment; (2) whether Blue Circle has an effective sexual harassment policy that precludes a finding of constructive notice and, if not, whether Blue Circle had constructive notice and thus reasonably should have known of several alleged incidents of harassment; and (3) whether Blue Circle took immediate and appropriate corrective action in response to those incidents of which it had notice. For this reason, the district court improperly granted summary judgment in favor of Blue Circle on the employer liability issue. Whether summary

21

judgment might be proper for some other reason raised by Blue Circle we leave to the district court to consider in the first instance.

For the foregoing reasons, we reverse the district court's grant of summary judgment to Blue Circle and remand for further proceedings consistent with this opinion.

REVERSED AND REMANDED.