[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 25, 2011
JOHN LEY
CLERK

No. 10-14998
Non-Argument Calendar
_____

D.C. Docket No. 1:09-cv-02206-TWT

CURTIS WILLIAMS,

                                        Plaintiff - Appellant,

versus

GWINNETT COUNTY PUBLIC SCHOOLS,
GEORGANN EATON,

                                        Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(April 25, 2011)

Before WILSON, PRYOR and BLACK, Circuit Judges.

PER CURIAM:

Curtis Williams appeals the summary judgment in favor of the Gwinnett County Public Schools and Georgann Eaton and against Williams's complaint of retaliation for speech protected by the First Amendment and discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), and the Americans with Disabilities Act, id. §§ 12101–12213. The district court ruled that Williams's speech did not involve a matter of public concern and that Williams's complaint of discrimination based on race, gender, and disability was untimely. We affirm.

In 2007, Gwinnett County Public Schools hired Williams at Sweetwater Elementary School as a "stellar substitute teacher." In 2008, Williams met with the principal of Sweetwater, Georgann Eaton, to discuss four instances in which he had made inappropriate comments to students and staff. On February 25, 2009, Eaton gave Williams an interim performance rating of satisfactory.

The school administered a program called Read 180 that used therapy dogs as part of the curriculum and, on March 13, 2009, Williams emailed to faculty and staff a four-page essay criticizing the program and its director. In the essay, which Williams titled "My Life is not a Life of Dogdom," he berated an unnamed staff member for acting "selfish[ly]" by bringing a dog into the school cafeteria, discussed his severe allergy to dog dander and the "compromise" reached in his

marriage in which his wife donated her German Shepherds to a drug detection agency, and urged the staff member to respect persons in her "community" by "keep[ing] [dogs] where they belong, in their natural habitats (at home, in shelters, with breeders, etc.)." Williams stated that persons "are not subject to animal authority nor those who place the life, safety, and sanctity of dogs above ours." Williams asked the staff member to balance her "need to rescue animals (dogs specifically)," "subject[] others to [her] fetish," and right to "walk [her] dogs (unquestioned) . . . around the school" with her responsibility to "care about faculty, staff and students" who might be allergic to dogs. In closing, Williams asked the staff member to "respect . . . the fact that [Williams's] rights to eat, and teach in a place free of pet dander must be acknowledged."

After Eaton learned about the essay, she met with Williams. Eaton requested that Williams discuss in private his "issues or concerns . . . regarding staff members." Eaton also requested that Williams to "share . . . important wellness issues that could cause [him] harm or threaten [his] health," and Eaton "immediately made arrangements" to "assign[] [Williams] to classrooms closely monitored" to avoid the type of severe allergy attack that he had described in his essay.

On March 30, 2009, Eaton gave Williams a "letter of direction" stating that his "use of Lotus Notes Email was inappropriate and unacceptable." Eaton explained that Williams's conduct "[did] not project the professional, authority figure image expected of and necessary for a teacher" and, although Williams had "a marked improvement regarding the expectations for following procedures for professional relationships with students and faculty since [an] April 21, 2008 conference held to review concerns presented at that time," the "misuse of the school's email address system raise[d] new concerns for this area of expectation." Nevertheless, because of Williams's "improved performance this year," Eaton gave Williams "an additional opportunity to demonstrate that [he] [was] able to carry [his] duties and responsibilities" as long as he "conduct[ed] [him]self in a professional manner at all times," refrained from making "inappropriate comments to or about staff or other members of the Sweetwater community," and "follow[ed] procedures for professional relationships with faculty." Eaton stated that the violation of "any one of [the] expectations" would result in "a recommendation to terminate [his] position."

Eaton required that Williams meet with "Mr. Russ Fleenor our Director for Human Resources" at a time "determined by Mr. Fleenor." Eaton also instructed Williams to "respond to [the] letter in writing by the end of the day on April 1,

2009, indicating that [he] underst[ood] the[] directives and [was] willing to abide by them." Williams signed the letter on March 31, 2009, but Williams never responded to Eaton's letter. On April 2, 2009, Eaton sent Williams an email message that instructed him to meet with Fleenor "at the Instructional Support Center on Friday, April 3, 2009 at 9:00 AM." Williams sent Eaton an email stating that he would "have to contact my attorney first and see what time he will be able to make it."

On the morning of April 3, 2009, Williams reported for work, but he did not attend the meeting scheduled with Fleenor. Afterward, Fleenor met with his supervisor, Dr. Sidney Camp, who agreed with Fleenor's recommendation to fire Williams. Later that day, Eaton escorted Williams to Fleenor's office, and Fleenor fired Williams.

Williams argues that he was terminated in retaliation for his email essay, but even if we accept that argument as true, Williams's essay "cannot be fairly characterized as constituting speech on a matter of public concern" that is protected by the First Amendment. Connick v. Myers, 461 U.S. 138, 146, 103 S. Ct. 1684, 1690 (1983). To prevail on a claim of retaliation for protected speech, an employee must establish that the "'purpose of [his] speech was to raise issues of public concern,'" Boyce v. Andrew, 510 F.3d 1333, 1344 (11th Cir. 2007)

(quoting Maggio v. Sipple, 211 F.3d 1346, 1353 (11th Cir. 2000)), which can be discerned from the content of the speech, the audience to whom the speech is delivered, and the motivation of the speaker, Mitchell v. Hillsborough Cnty., 468 F.3d 1276, 1283 (11th Cir. 2006). The title, tenor, and audience of Williams's essay reveals that it "did not address any subject not personal to [his] working conditions" at the school. Boyce, 510 F.3d at 1344. Williams distributed to his coworkers an essay that communicated his disdain for dogs in his workplace and his personal grievance against a staff member. Williams's brief statements that students and staff might have similar allergies did "'not transform [his] personal grievance into a matter of public concern.'" Id. (quoting Ferrara v. Mills, 781 F.2d 1508, 1516 (11th Cir. 1986)); see Renfroe v. Kirkpatrick, 722 F.2d 714, 715 (11th Cir. 1984). Because Williams's essay addressed "matters only of personal interest," we will not "review the wisdom of" the decision by Gwinnett County to terminate Williams. Connick, 461 U.S. at 147, 103 S. Ct. at 1690.

Williams also argues that the charge of discrimination that he filed on October 1, 2009 was timely, but we disagree. To exhaust his administrative remedies, Williams was required to file a charge of discrimination within 180 days after the alleged act of discrimination. 42 U.S.C. § 2000e-5(e)(1); Watson v. Blue Circle, Inc., 324 F.3d 1252, 1258 (11th Cir. 2003). Williams argues that the

6

limitations period began to run on May 21, 2009, when he received a letter from the Board of Education stating that he had been terminated, but a "collateral review of an employment decision[] does not toll the running of the limitations period[]." Del. State Coll. v. Ricks, 449 U.S. 250, 261, 101 S. Ct. 498, 506 (1980). The 180-day period began to run on April 3, 2009, when Fleenor fired him, and Williams included that date on his charge of discrimination. Williams's charge of discrimination was untimely.

The summary judgment against Williams's complaint is **AFFIRMED**.