[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-11015

Non-Argument Calendar

_____

BRAEONDA BELL,

Plaintiff-Appellant,

*versus*

LIBERTY NATIONAL LIFE INSURANCE COMPANY,
a corporation,
CLINT MCLAIN AGENCY, INC.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 2:19-cv-01335-ACA

_____

Before LUCK, LAGOA, and ANDERSON, Circuit Judges.

PER CURIAM:

Braeonda Bell appeals following the district court's grant of summary judgment for Liberty National Life Insurance ("Liberty National") and Clint McClain Agency, Inc. ("TCMA") on her racially hostile work environment claim under the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981. After careful review, we affirm.

## I.

Liberty National sells life insurance and supplemental health insurance. To sell its products, Liberty National utilizes a "field force" of independent contractors across the country. Clint McLain operates TCMA, a corporation that leases office space and owns office equipment that he and other Liberty National independent agents may use. Liberty National did not have a legal relationship with TCMA, but rather had an independent contract with Clint McLain.

Bell, an African American female, was initially contacted by Liberty National by email after she posted her resume on a job-search website. She testified that Scott Pritchett, a white male, and Phillip Nichols interviewed her for the position as an insurance agent. At the time, she believed that Pritchett was her "immediate supervisor." Luke Gilliam, a senior vice president at Liberty National, testified that Pritchett was an independent contractor. On May 4, 2018, the same day as her "interview," Bell entered into an

Independent Agent Agreement ("Agreement") with Liberty National. The Agreement expressly stated that "the relationship intended by this Contract between the Independent Agent and the Company shall be that of an independent contractor only, and that nothing contained herein shall be construed to create the relationship of employer and employee." The Agreement further stated that the "Independent Agent shall not be considered an employee of the Company for purposes of any federal or state law or regulation." Gilliam testified that he had visited the TCMA office twice.

Bell testified that she was an "independent contractor insurance agent." Liberty National did not set sales quotas for Bell but did require her to produce one premium application every eight weeks to keep her status as an independent agent. Liberty National set no requirements as to how many hours a day Bell had to spend selling insurance. During her time as an independent agent, Bell earned between $1,500 and $2,000 in commission payments from Liberty National. Bell testified that Pritchett approved her sale leads and would sometimes deny her the opportunity to sell somebody insurance if "he felt like it wasn't worth [her] going or it wasn't enough money."

She attended three days of job training that covered how to get leads and sell Liberty National insurance. When Bell started working, she would travel with Pritchett to people's homes to train on how to sell insurance. According to Bell, about two or three weeks into driving around with him, Pritchett began saying racial slurs around her, including the n-word, and making racial and

sexually inappropriate jokes on a regular basis both in the car and at the TCMA office.

Bell testified that she reported Pritchett to McClain about four months after the inappropriate comments began. That was the first time that Bell ever told anybody associated with Liberty National or Clint McLain that Pritchett was behaving inappropriately. After that meeting, Bell started working with someone else and was never asked to work with Pritchett again. She testified that she had to see him but did not have to talk to him. Bell testified that after that meeting, Pritchett never harassed or said anything inappropriate to her again. About a month later, Bell stopped selling insurance as an independent contractor with Liberty National. Clint McLain testified that Bell declined an offer to report Pritchett to Liberty National. For his part, Clint McLain stated that he was shocked and surprised to hear about the sexual and racial harassment.

In August 2019, Bell filed a complaint against Liberty National and TCMA. In her amended complaint, she alleged sexual harassment in violation of Title VII of the Civil Rights Act (Count 1); sexually hostile working environment in violation of Title VII (Count 2); race discrimination in violation of Title VII and 42 U.S.C. § 1981 (Count 3); racially hostile working environment in violation of Title VII and 42 U.S.C. § 1981 (Count 4); and state law claims for intentional infliction of emotional distress, and negligent and/or malicious retention, supervision, and training. (Count 5 and 6).

22-11015                Opinion of the Court                 5

On March 29, 2021, Liberty National and TCMA both filed motions for summary judgment. On March 1, 2022, the district court entered an order granting summary judgment for Liberty National and TCMA on all of Bell's federal claims and declined to exercise supplemental jurisdiction over her state law claims.[1] As to her claims under § 1981 against Liberty National and TCMA, the district court first explained that it would construe her claim for race discrimination as one advancing a hostile work environment theory of liability because she cited to cases examining hostile work claims, stated that she was denied the right to work in an environment free of discrimination and racial slurs, and did not identify any discrete adverse employment action taken by either company. The district court then discussed the proper five-step framework for these claims and noted that it could not located an Eleventh Circuit decision analyzing a § 1981 hostile work environment claim brought by an independent contractor under that framework.

Liberty National and TCMA only challenged the fourth and fifth elements of Bell's hostile work environment claim, which require Bell to show that her harassment was severe or pervasive enough to alter the terms and conditions of her employment and that Liberty National and TCMA were responsible for her work

---

[1] Bell does not appeal the district court's grant of summary judgment on her claims of sexual harassment or sexually hostile work environment under Title VII nor her claims of a racially hostile work environment under Title VII. She also does not appeal the district court's dismissal without prejudice of her state-law claims.

environment under a theory of either vicarious or direct liability, respectively.  Assuming that Bell created triable issues of fact as to whether Pritchett's racial harassment was severe and pervasive, the district court concluded that her claim still failed because she could not demonstrate liability for either Liberty National or TCMA. Bell's tangible employment action theory also failed because she did not identify a tangible employment action that Pritchett, Liberty National, or TCMA took because of the harassment.

Further, before determining other levels of liability, the district court first asked whether Pritchett was a coworker or supervisor of Bell.  Noting that Bell failed to cite any record evidence that Pritchett was a supervisor for TCMA or that Liberty National empowered Pritchett to approve of her sales leads, the district court concluded that as a matter of law Pritchett was not Bell's supervisor.  Because Pritchett was her coworker, the district court noted that Liberty National and TCMA would be liable only if they knew or should have known of the harassment in question and failed to take prompt remedial action.  As to TCMA, because Bell never had to work with Pritchett and the harassment stopped after she reported it to McClain, the district court concluded that there was no triable issue of fact about whether TCMA took appropriate remedial action once it knew of the harassment.  As to Liberty National, because the record contained no evidence that Liberty National knew or should have known of Pritchett's conduct and Bell declined the invitation to report him to Liberty National, the district court concluded that Bell did not establish a basis for holding Liberty National liable for Pritchett's racial harassment.  Without

liability for either Liberty National or TCMA, the district court determined that her claims failed as a matter of law.

Bell timely appealed.

## II.

We review the district court's grant of summary judgment *de novo*. *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1263 (11th Cir. 2010). Summary judgment is appropriate if the movant shows that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. *Id.* at 1263–64. In determining whether there is a genuine dispute of material fact to defeat a motion for summary judgment, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). We may affirm summary judgment on any ground supported by the record, even if the district court relied on an incorrect ground or gave an incorrect reason. *Alvarez*, 610 F.3d at 1264.

## III.

On appeal, Bell challenges the district court's summary judgment ruling only as to her racially hostile work environment claims under 42 U.S.C. § 1981. She first argues that the conditions of her employment were sufficiently severe because of Pritchett's racially inappropriate comments. She next argues that Liberty National and TCMA were liable for this harassment because Pritchett was her supervisor, and, alternatively, that Liberty National and TCMA would still be liable because they should have known about his harassing conduct.

Section 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).  Section 1981 permits claims based on a racially hostile work environment.  *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1008 n.17 (11th Cir. 1997).

We examine § 1981 claims for a hostile work environment under the same legal framework as Title VII.  *Smelter v. S. Home Care Servs., Inc.*, 904 F.3d 1276, 1283 & n.3 (11th Cir. 2018).  For a hostile work environment claim, the employee must prove: (1) she belongs to a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her race; (4) the harassment was severe or pervasive enough to alter the terms of her employment and create an abusive working environment; and (5) the employer is responsible for the environment under a theory of vicarious or direct liability.  *Id.* at 1284.

Under the fifth element, the employer's liability depends on whether the harassing employee is the plaintiff's coworker or supervisor.  *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1278 (11th Cir. 2002).  When a supervisor creates a hostile environment, an employer is subject to vicarious liability.  *Id.*  If the supervisor takes

tangible employment action against the plaintiff, the employer will be strictly liable. *Id.* An employee is a supervisor for purposes of vicarious liability when "the employer has empowered that employee to take tangible employment actions against the victim." *Vance v. Ball State Univ.*, 570 U.S. 421, 431 (2013). Tangible employment actions are those that cause a significant change in employment, such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

When the perpetrator is merely a coworker, the employer will be held directly liable "if it knew or should have known of the harassing conduct but failed to take prompt remedial action." *Miller*, 277 F.3d at 1278. Employers can also be liable for failing to remedy harassment of employees by third parties. *Beckford v. Dep't of Corr.*, 605 F.3d 951, 957 (11th Cir. 2010). The victim must show actual knowledge or conduct sufficiently severe to constitute constructive knowledge. *Miller*, 277 F.3d at 1278. To decide whether an employer had constructive notice, we consider: (1) the remoteness of the location of the harassment compared to the location of management; (2) whether the harassment occurs intermittently over a long period of time; (3) whether the victims were employed part-time or full-time; and (4) whether there were only a few instances of harassment. *Id.* at 1278–79. "If an employer has actual or constructive notice of harassment but takes immediate and appropriate corrective action, the employer is not liable for the

harassment." *Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1261 (11th Cir. 2003).

As an initial matter, we conclude that based on the record evidence, Pritchett was not Bell's supervisor. Despite Bell's testimony that Pritchett was her "immediate supervisor," the record evidence shows that he did not have the power to hire, fire, promote, or reassign Bell on his own or make any decisions affecting her benefits. To the extent that Pritchett interviewed her, trained her, and approved of her leads, Liberty National did not empower Pritchett to do any of those things. And because neither Pritchett nor Bell had any legal relationship with TCMA, he could not have been empowered to do those things on TCMA's behalf. We thus conclude that Liberty National and TCMA cannot be held vicariously liable for Pritchett's actions because he was not Bell's supervisor. *Miller*, 277 F.3d at 1278. Because Bell and Pritchett were coworkers, Liberty National and TCMA can only be held liable if they knew or should have known of the harassing conduct but failed to take prompt remedial action. *Id.* at 1278–79; *Watson*, 324 F.3d at 1261.

We begin our discussion with TCMA. The record evidence shows that TCMA took immediate remedial action once it had actual knowledge and thus cannot be liable for the harassment. *See Watson*, 324 F.3d at 1261. Indeed, Bell does not dispute that after the first time she complained to McClain about Pritchett's conduct, Pritchett no longer harassed her and never worked with her again. Given this record evidence, we conclude that the district court did

not err in concluding that TCMA did not have liability after it took immediate and appropriate corrective action upon receiving actual notice of the harassment.

With regards to Liberty National, there is no record evidence that Bell reported the harassment to Liberty National, such that it would have had actual notice. Rather, the record shows that Bell declined McClain's offer to report Prichett's harassment to Liberty National. The record evidence further shows that the harassment occurred on property that Liberty National did not own or operate. And the only evidence of contact between Liberty National and Bell's workplace was Vice President Gilliam's two visits, and Bell does not allege that he heard any harassment or that it was occurring during those visits. Given this record evidence, we conclude that the district court did not err in concluding that Liberty National did not have liability given its lack of actual or constructive notice.

## IV.

For the reasons stated, we conclude that the district court did not err in finding Liberty National and TCMA were not vicariously liable because the perpetrator was not Bell's supervisor and he did not take any tangible employment action against her. We also conclude that the district court also did not err in finding that the defendants were not directly liable because Liberty National never received actual or constructive notice of the harassment and when TCMA received notice, it took action to stop the harassment.

Thus, we affirm the district court's grant of summary judgment for Liberty National and TCMA.

**AFFIRMED.**