**FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————

No. 24-11586

————————————

ELENA MUKHINA,

*Plaintiff-Appellant,*

*versus*

WALMART, INC.,

*Defendant-Appellee.*

————————————

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:22-cv-00361-JB-C

————————————

Before WILLIAM PRYOR, Chief Judge, and LAGOA and KIDD, Circuit
Judges.

WILLIAM PRYOR, Chief Judge:

This appeal requires us to decide whether the district court
erred when it granted summary judgment against an employee's
claims of national origin discrimination based on a hostile work

environment, religious discrimination, and retaliatory discharge. Elena Mukhina alleges that, during her employment with Walmart, her coworkers and customers treated her poorly because she could not speak English, she was denied time off on a religious holiday, and Walmart retaliated against her for raising complaints. Because Mukhina failed to present substantial evidence of either a hostile work environment or retaliation and failed to exhaust her administrative remedies for her claim of religious discrimination, we affirm.

## I. BACKGROUND

Mukhina is a Russian national and adherent of Russian Folk Christianity. She understands some English but cannot speak the language well. She began working at Walmart in the apparel department where she understood she would communicate with customers.

When customers realized she did not speak English, some expressed dissatisfaction and anger and others laughed at her or mocked her. Mukhina experienced this treatment every day. Coworkers also laughed at her and spoke to her disparagingly because she did not understand them.

Mukhina complained to her supervisor that customers were rude to her because she could not understand English, and she requested a transfer to work on the night shift. Her manager told her that he could transfer her to the night shift after he found a replacement for her, but that it might take a few weeks. Six weeks later, Mukhina complained of harassment and discrimination by both

24-11586                Opinion of the Court                3

customers and coworkers. She received the transfer three days later, and her working conditions improved.

Mukhina still experienced some negative treatment from her coworkers after her transfer. One coworker pushed a shopping cart toward her, and another accused her of being greedy because the night shift pays a higher rate. She also had to retrieve her own freight and was told she could not use a shopping cart for her work.

Mukhina requested leave on New Year's Eve. She told her supervisor that New Year's Eve was an important holiday for her as a Russian and that it was the same for her as Christmas Day was for Americans. Her supervisor denied the leave request because requests were granted on a first come, first serve basis, and other associates had asked for that day off before her. Mukhina took New Year's Eve off without permission and received two attendance points according to Walmart's attendance policy.

Mukhina filed an ethics complaint with Walmart based on the denial of her request for time off. After filing the complaint, some employees treated Mukhina better by greeting her and speaking to her politely and some treated her worse. One unidentified coworker approached her and engaged in verbally abusive behavior toward her regarding the Russian invasion of Ukraine. Mukhina did not tell anyone about the interaction and decided to quit. Walmart officially terminated Mukhina's employment soon afterward.

Mukhina completed an intake questionnaire with the Equal Employment Opportunity Commission. In it, Mukhina listed only

"National origin and/or ethnicity" as the reason for the complaint. She stated that she was denied time off on New Year's Eve, "one of the most important holidays for [Mukhina] as a Russian person" with many "national traditions." She said that in Russia, New Year's Eve "is like Christmas in America." But she did not allege that she considered New Year's Eve to be a religious holiday.

Mukhina next filed a charge of discrimination with the Commission that alleged retaliation and discrimination based on national origin. The narrative section of the charge did not include any details about her being denied time off on New Year's Eve. The Commission dismissed her charge and issued her a right-to-sue letter.

Mukhina filed a *pro se* complaint against Walmart. She alleged that Walmart subjected her to a hostile work environment based on her national origin, discriminated against her based on her religion by failing to provide reasonable accommodations, and retaliated against her for requesting accommodations and complaining about the alleged discrimination. Walmart moved for summary judgment.

The district court granted summary judgment in favor of Walmart. It ruled that Mukhina failed to establish that her hostile work environment was based on her national origin, that the harassment was sufficiently severe, or that Walmart was responsible for any mistreatment. It ruled that Mukhina had failed to exhaust her claim of religious discrimination, and even assuming her claim was not barred, she did not inform Walmart of the religious nature

of the holiday and did not suffer an adverse action. As to her retaliation claim, it ruled that she could not establish an adverse action causally connected to her complaint of discrimination.

We appointed Travis Ramey of the University of Alabama School of Law's Appellate Advocacy Clinic as counsel for Mukhina. Sarah Frances Jackson and Abby Vandiver presented oral argument. We thank Mr. Ramey, Ms. Jackson, Ms. Vandiver, and the clinic for accepting the appointment and for their excellent representation.

## II. STANDARD OF REVIEW

We review a summary judgment *de novo*, and we view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Bailey v. Metro Ambulance Servs., Inc.*, 992 F.3d 1265, 1272 (11th Cir. 2021).

## III. DISCUSSION

We divide this discussion into three parts. First, we explain that Mukhina failed to establish a claim of hostile work environment. Second, we explain that Mukhina failed to exhaust her administrative remedies for her claim of religious discrimination. Finally, we explain that Mukhina failed to establish a claim of retaliation.

### A. Mukhina Failed to Present Substantial Evidence of a Hostile Work Environment.

To prove a claim of hostile work environment under Title VII, the plaintiff must present evidence that she belongs to a

protected group; she has been subject to unwelcome harassment; the harassment was based on a protected characteristic of the employee, such as national origin; the harassment "was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment"; and there is a basis for holding the employer liable. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002). To determine if harassment was sufficiently severe or pervasive, we look to the totality of the circumstances, including the frequency and severity of the conduct, "whether the conduct is physically threatening or humiliating" instead of "a mere offensive utterance," and "whether the conduct unreasonably interferes with the employee's job performance." *Tonkyro v. Sec'y, Dep't of Veterans Affs.*, 995 F.3d 828, 837 (11th Cir. 2021) (citation and internal quotation marks omitted). Isolated incidents are ordinarily not sufficient to establish a hostile work environment. *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999) (en banc). When "the alleged harassment is committed by co-workers or customers," the plaintiff must establish that the employer "had notice of the alleged harassment and failed to take immediate and appropriate corrective action." *Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1257, 1259 (11th Cir. 2003).

Mukhina experienced daily instances of customers, coworkers, and supervisors laughing at her, mocking her, and becoming angry with her due to her inability to communicate in English. But frustration with her inability to communicate does not constitute harassment based on her national origin. *See EEOC v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018, 1030 (11th Cir. 2016) (holding that Title

24-11586                Opinion of the Court                7

VII protects immutable characteristics, not cultural practices like a preferred language); *see also Garcia v. Gloor*, 618 F.2d 264, 268–271 (5th Cir. 1980). And Mukhina failed to provide evidence that incidents where a coworker pushed a shopping cart toward her, prevented her from using a shopping cart, or required her to retrieve her own freight were related to her national origin. *See Miller*, 277 F.3d at 1275. Only an isolated incident involving a comment about the Russian invasion of Ukraine involved her national origin. But that single utterance was not "physically threatening or humiliating" and did not "unreasonably interfere[] with [her] job performance" so that it could be considered severe. *Tonkyro*, 995 F.3d at 837 (citation and internal quotation marks omitted).

Mukhina cites one precedent for the proposition that "comments about an employee's accent or linguistic mannerisms support an inference of discrimination based on national origin." Yet that decision involved more than "comments about an employee's accent or linguistic mannerisms." *See Akouri v. State of Fla. Dep't of Transp.*, 408 F.3d 1338, 1348 (11th Cir. 2005) (upholding jury's finding of discrimination when a supervisor "blatantly state[d] that the reason [the employee] was passed over for the promotion was his ethnicity"). To be sure, comments about an employee's accent or linguistic mannerisms can support an inference of discrimination when combined with other harassing conduct motivated by national origin, but Title VII "does not support an interpretation that equates the language an employee prefers to use with his national origin." *Catastrophe Mgmt. Sols.*, 852 F.3d at 1030 (quoting *Garcia*, 618 F.2d at 270).

Mukhina also failed to establish any basis for holding Walmart liable. When she first complained to her manager, Mukhina stated only that customers were being rude to her based on her inability to communicate. She did not complain about her coworkers or report discrimination at that time. Her manager expressed a willingness to transfer her to the night shift as soon as he found a replacement for her, but he explained that locating a replacement could take time. It was not until Mukhina complained again that her manager understood her to complain of harassment and discrimination by both customers and coworkers. And even then, Mukhina again attributed the harassment to her language struggles, not to any protected characteristic. Three days after the second complaint, Walmart transferred Mukhina to the night shift. Walmart took "immediate and appropriate corrective action" after learning about the harassment. *Watson*, 324 F.3d at 1257.

## B. Mukhina Failed to Exhaust Her Administrative Remedies for Her Claim of Religious Discrimination.

Before filing a complaint under Title VII, an employee must file a charge of discrimination with the Equal Employment Opportunity Commission. *Patterson v. Ga. Pac., LLC*, 38 F.4th 1336, 1345 (11th Cir. 2022). A complaint is "limited by the scope of the [Commission] investigation which can reasonably be expected to grow out of the charge of discrimination." *Id.* (citation and internal quotation marks omitted). "The facts alleged in the charge matter most" and "the legal theory the charging party articulates is far less important." *Jimenez v. U.S. Att'y Gen.*, 146 F.4th 972, 990 (11th Cir. 2025) (citation and internal quotation marks omitted). "[J]udicial

claims are allowed if they amplify, clarify, or more clearly focus the allegations in the [Commission] complaint, but . . . allegations of new acts of discrimination are inappropriate." *Gregory v. Ga. Dep't of Hum. Res.*, 355 F.3d 1277, 1279–80 (11th Cir. 2004) (citation and internal quotation marks omitted).

Mukhina relies on the intake questionnaire she filed with the Commission to argue that her religious discrimination claim "grew out of" her initial allegations. In her view, the intake questionnaire alleged a claim of religious discrimination because it explained that she was denied time off on New Year's Eve, "one of the most important holidays for [Mukhina] as a Russian person" with many "national traditions," and compared the holiday to "Christmas in America." But the employee's formal charge, not the intake questionnaire, is what counts. *Pijnenburg v. W. Ga. Health Sys., Inc.*, 255 F.3d 1304, 1306 (11th Cir. 2001). Although we have recognized a limited exception to this rule for purposes of the statute of limitations, *see Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1321 (11th Cir. 2001), Mukhina cannot invoke that exception because she filed a timely charge with the Commission. And her operative charge alleged only "retaliation" and "national origin" discrimination, not religious discrimination. Nor did the narrative section of the charge include any details about her being denied time off on New Year's Eve.

Even if we could consider Mukhina's intake questionnaire, it would not help her. Much like her charge, the questionnaire lists only "National origin and/or ethnicity" as the reason for the

complaint. And although the questionnaire compared New Year's Eve to "Christmas in America," it never stated that New Year's Eve was a *religious* holiday *for Mukhina* or even mentioned Mukhina's religious beliefs. Likewise, her reference to "national traditions" connotes a cultural, not religious, practice. A claim of religious discrimination would not be expected to "grow out of" the allegations in the intake questionnaire because the questionnaire did not mention Mukhina's religion or that New Year's Eve was a religious holiday. *See Patterson*, 38 F.4th at 1345 (citation and internal quotation marks omitted). Mukhina failed to exhaust her administrative remedies for her claim of religious discrimination.

C. *Mukhina Failed to Present Substantial Evidence of Retaliation.*

To establish a prima facie case of retaliation, a plaintiff must prove that she participated in protected activity, that she suffered an adverse action, and that there was a causal relationship between the protected activity and the adverse action. *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008). A plaintiff must prove that "her protected activity was a but-for cause of the alleged adverse action," *Yelling v. St. Vincent's Health Sys.*, 82 F.4th 1329, 1338 (11th Cir. 2023) (citation and internal quotation marks omitted), and that "the adverse act followed the protected conduct," *Griffin v. GTE Fla., Inc.*, 182 F.3d 1279, 1284 (11th Cir. 1999). There is no claim for retaliation when the "alleged retaliatory conduct was the same continuous harassment that gave rise to the initial complaint . . . unless . . . there was a ratcheting up of the harassment." *Id.* (alterations adopted) (citation and internal quotation

marks omitted). If the employer offers "a legitimate, non-retaliatory reason for the adverse employment action," the plaintiff must prove that the employer's reason "is a pretext for prohibited, retaliatory conduct." *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998).

Mukhina argues that her complaints to her supervisors about her working conditions, her request for time off to celebrate a religious holiday, and her ethics complaint constitute protected activity. And she argues that she suffered two adverse employment actions because of her participation in those protected activities: the imposition of two attendance points and her constructive discharge.

Mukhina failed to prove a causal connection between her protected activity and the imposition of two attendance points. Mukhina was assigned the attendance points because she missed work, not because she requested the day off or made an ethics complaint. Mukhina cannot establish that but for her request or her complaint, she would not have been assigned the attendance points. *See Yelling*, 82 F.4th at 1338. And even assuming, for the sake of argument, that Mukhina proved a causal connection, Walmart offered a legitimate, nondiscriminatory reason why it imposed the attendance points: "Walmart's policy provided for them." Mukhina offers no evidence that this reason is pretextual.

Mukhina's argument that she suffered a constructive discharge fails too. Because she argues that the harassment created a hostile work environment before she complained, Walmart could

not have created the hostile environment that led her to quit in retaliation for her complaints. *See Griffin*, 182 F.3d at 1284. Mukhina also failed to establish that the harassment "ratchet[ed] up" after she complained to her supervisors. *Id.* (citation and internal quotation marks omitted). Indeed, Walmart transferred Mukhina to the night shift after she complained, and her working conditions improved. And Mukhina did not quit until several months after the transfer. She was not constructively discharged in retaliation for her informal complaints or for her ethics complaint.

Mukhina also failed to present a convincing mosaic of circumstantial evidence to support her claim of retaliation. *See Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1310–11 (11th Cir. 2023). Nothing in the record supports an inference that Walmart took retaliatory action against her after she complained or requested time off. A reasonable jury could not infer retaliatory intent based on this record.

## IV. CONCLUSION

We **AFFIRM** the summary judgment in favor of Walmart.