[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-14503
Non-Argument Calendar

_____

D.C. Docket No. 1:11-cv-03468-RLV

CHRISTY MANLEY,
JANAYA DAVIS,
DENISE PORTER,

Plaintiffs - Appellants,

versus

DEKALB COUNTY, GEORGIA,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(September 3, 2014)

Before TJOFLAT, JORDAN, and ANDERSON, Circuit Judges.

PER CURIAM:

Christy Manley, Janaya Davis, and Denise Porter, appeal the district court's

grant of summary judgment in favor of Dekalb County on their claims of gender

and race discrimination under 42 U.S.C. §§ 2000e-2(a) ("Title VII") and 42 U.S.C. § 1981. The plaintiffs, African-American female employees of the DeKalb County Fire Department, filed suit after being denied various promotions and being subjected to disciplinary actions by the same supervisor.

On appeal, the plaintiffs present several arguments. First, they assert that the district court erred in rejecting their disparate-impact claim, based on a finding that the claim was not raised in the amended complaint. Second, they argue that their Title VII disparate-treatment claims arising before December 31, 2010, were not time-barred. Third, they assert that the district court erred in granting summary judgment on their failure to promote, retaliation, hostile-work environment, and retaliatory hostile work environment claims under Title VII.

After reviewing the record and the parties' briefs, we affirm.

## I

We write only for the parties, and presume their knowledge of the underlying record. We therefore set out only what is necessary to explain our decision.

## A

In June of 2010, Ms. Manley passed the rescue captain exam. At some point thereafter, Chief Edward O'Brien, the Department's top official, suspended Ms. Manley for one day for abuse of sick leave. This suspension disqualified Ms.

2

Manley from receiving the rescue captain promotion. Ms. Manley appealed, and on December 7, 2010, the hearing officer reversed her suspension. Ms. Manley was promoted to rescue captain in January of 2011.

Ms. Manley was also written up on two other occasions, one on November 24, 2010, for excessive absenteeism, and another on December 15, 2011, for violating department guidelines. Ms. Manley alleged that these write ups were retaliatory, but conceded that there was no accompanying reduction in pay, benefits, or responsibilities.

Ms. Manley testified that, once she became rescue captain, some of her coworkers would refuse to talk to her. In terms of racial or gender harassment, Ms. Manley never heard any supervisors or coworkers make derogatory remarks about women or African-Americans.

**B**

Ms. Porter was promoted to rescue captain in 2008. She applied for battalion chief twice, in 2010 and 2011, but was not chosen. After the first denial, Ms. Porter asked why she was not promoted; Chief O'Brien informed her that she needed experience as a fire captain. Ms. Porter alleged that white males were promoted to the position of battalion chief without previous fire captain experience. Those individuals, however, were promoted before Chief O'Brien's tenure.

3

Ms. Porter alleged discrimination when she was denied training opportunities in a center in Maryland where captains from other departments, but not her department, usually trained.  In 2012, she asked to attend public health classes, not fire academy classes, but was denied permission.

Ms. Porter also claimed that she was subjected to retaliation because she filed an internal complaint in October of 2010 and an EEOC charge (which included the training denials) in June of 2011. The alleged retaliatory acts began in 2009, and included Ms. Porter being the only rescue captain who worked out of a cubicle and without a take home car, conditions which were not rectified until December of 2011.

After this lawsuit was filed Ms. Porter stated that some of her co-workers ignored her, and others made comments such as "I heard you have a lawsuit pending. You're holding up promotions." Ms. Porter did not report these comments, and admitted that they did not prevent her from doing her job. Like Ms. Manley, Ms. Porter did not hear any derogatory language about women or African-Americans from any of her co-workers or supervisors, including Chief O' Brien.

### C

Ms. Davis enrolled in an Acting Officer In Charge (AOIC) class in June of 2010, which was required before she could sit for the fire captain's exam. She was removed from the class, however, because she lacked a prerequisite. Even if she

4

had completed the class, Ms. Davis would not have been able take the fire captain exam administered in June of 2010, and no exam was administered thereafter. Ms. Davis did not suffer any reduction in pay for being declared ineligible for the class.

On October 28, 2010, Ms. Davis sent an internal complaint to Director William Z. Miller and human resources alleging harassment over her removal from the AOIC class, denial of vacation requests, and requests for documentation while on sick leave. Ms. Davis alleged that the Department retaliated against her by denying vacation requests, micromanaging her, and punishing her for errors on her reports.

On November 10, 2010, Ms. Davis received a write-up that was dated October 26, 2010. And on April 30, 2011, she received a second write-up that was prepared in December of 2010. Because of her second offense, Ms. Davis was suspended in April of 2011.

Ms. Davis testified that a former coworker, Jacqueline Walls, overheard Chief William Smith (the former top official) talking about not wanting African-Americans or women in the Department and, if he had it his way, none of the African-American or female captains would make it off probation. Ms. Davis also alleged overhearing Captains Jimmy Benalcazar and Mark Sherman saying openly (on two occasions) that women should not be firefighters and that they would not work for a female captain. Ms. Davis, however, never personally heard Chief

5

O'Brien, Director Miller, or her co-workers use derogatory language about women or African-Americans.

## II

We review a district court's grant of summary judgment *de novo*, applying the same standards as the district court. *See Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1256 (11th Cir. 2003). Conclusory allegations are insufficient to defeat a motion for summary judgment. *See Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984).

We will not address any legal claim or argument that a party has failed to brief on appeal. *See Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("If an argument is not fully briefed (let alone not presented at all) to the Circuit Court, evaluating its merits would be improper both because the appellants may control the issues they raise on appeal, and because the appellee would have no opportunity to respond to it."). Nor do we address arguments that were not raised below. *See id.* at 1331 ("This Court has repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court.").

## III

As an initial matter, the plaintiffs do not address in their joint brief their race and gender discrimination claims under 42 U.S.C. § 1981, nor do they discuss 42

6

U.S.C. § 1983, which is the only procedural vehicle through which a § 1981 claim can be brought against DeKalb County. *See Baker v. Birmingham Bd. of Educ.*, 531 F.3d 1336, 1337 (11th Cir. 2008) ("claims against state actors or violations of § 1981 must be brought pursuant to § 1983"). The plaintiffs have therefore abandoned their § 1981 claims. *See Access Now*, 385 F.3d at 1330.

Turning to the Title VII claims, the district court correctly found that the plaintiffs tried to improperly raise, for the first time, a disparate-impact claim in their opposition to summary judgment. We have held that a plaintiff may not add new claims to her complaint through an argument in a brief opposing a motion for summary judgment. The proper avenue for adding a new claim at the summary judgment stage is to ask the district court for leave to amend pursuant to Rule 15(a). *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004). The district court therefore did not err in dismissing the unpled disparate-impact claim because the plaintiffs alleged, at the summary judgment stage and without first seeking (and being granted) leave to amend, that facts in the amended complaint which supported other claims also gave rise to a disparate-impact claim. *See id.*

## IV

Title VII requires a plaintiff to exhaust certain administrative remedies by filing a timely charge of discrimination with the EEOC before filing a suit for

7

employment discrimination. *See* 42 U.S.C. §§ 2000e-5. For a charge to be timely in a non-deferral state like Georgia, it must be submitted within 180 days of the date when the employee becomes aware of the employment decision or act giving rise to the claim. *See Watson*, 324 F.3d at 1258 (citing § 2000e-5(e)(1)). Accordingly, in general, only those claims arising within 180 days prior to the filing of the EEOC discrimination charge are actionable under Title VII. *See id.*

The continuing-violation doctrine permits a plaintiff to sue on an otherwise time-barred claim if related acts of discrimination continued to occur within the limitations period. *See E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1271 (11th Cir. 2002). The Supreme Court has held, however, that the continuing-violation doctrine does not apply to discrete acts of discrimination. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

Here, the district court properly concluded that the plaintiffs' Title VII disparate-treatment claims arising before December 31, 2010, were time-barred because the plaintiffs filed their EEOC charges on June 29, 2011, and therefore any claims arising before December 31, 2010, were outside the 180-day limitations period. *See* § 2000e-5(e)(1).[1] The district court also correctly ruled that the continuing-violation doctrine did not apply to the plaintiffs' disparate-treatment

---

[1] To the extent that the plaintiffs are attempting to raise a pattern or practice claim on appeal, we do not address that claim because it was not raised below. *See Access Now*, 385 F.3d at 1331.

claims arising before December 31, 2010, because those claims were based on the alleged denial of promotions, write-ups, and suspensions, which were all discrete acts of discrimination. *See Morgan*, 536 U.S. at 113-14.

The district court's time-bar rulings left two timely disparate-treatment claims under Title VII: (a) Ms. Porter's failure-to-promote claim arising from a promotion denial in September of 2011; and (b) Ms. Davis' claims arising out of the April 2011 suspension, the denial of vacation requests, and the requests for documentation. The plaintiffs have abandoned these claims, however, because they have failed to address the district court's conclusion that Ms. Porter's claim was unexhausted, and have not specifically addressed any of Ms. Davis' disparate-treatment claims. *See Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (explaining that a passing reference to an issue, absent specific argument, amounts to abandonment of the issue on appeal).

In sum, the plaintiffs' disparate-treatment claims under Title VII are time-barred, or have otherwise been abandoned on appeal.

## V

Title VII prohibits employers from retaliating against employees who have brought a charge of unlawful employment practice. *See* 42 U.S.C. § 2000e-3(a). To establish a *prima facie* case of discriminatory retaliation, a plaintiff must show (1) that she engaged in protected activity under Title VII; (2) that she suffered a

materially adverse action; and (3) that there was a causal connection between the two events. *See Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1258 (11th Cir. 2012).

An employment action becomes materially adverse when it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citation and internal quotation marks omitted). Although Title VII protects against forms of retaliation that produce an objective injury or harm, it does not protect against "normal petty slights, minor annoyances, and simple lack of good manners." *Id.* at 67-68.

The causal connection element is construed broadly, so that all a plaintiff needs to demonstrate is that the protected activity and the unlawful employment action are not totally unrelated. *See Chapter 7 Tr.*, 683 F.3d at 1260. Yet if the alleged retaliatory conduct occurred before the employee engaged in protected activity, the two events cannot be causally connected. *See Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1233 (11th Cir. 2006) (explaining that there was no causal link between the alleged retaliatory conduct, the reduction in work hours after the Christmas holidays, and the plaintiff's complaint of harassment where the decision to decrease the plaintiff's work hours had been made and conveyed to the plaintiff when she was hired). Applying these standards,

10

we conclude that the district court correctly granted summary judgment on each of the plaintiffs' Title VII retaliation claims.

Ms. Manley subjectively believed that the two write-ups she received after her appeal were retaliatory, but nothing in the record suggests that she suffered a materially adverse employment action. Indeed, there was no reduction in pay, benefits, or responsibilities that would demonstrate an adverse effect.

Ms. Porter's alleged retaliatory claims, involving exclusion by her coworkers, denial of permission to attend classes outside the Department, and having to train in-state, are not enough to establish a materially adverse action because they amounted to minor annoyances and not objective harm. *See Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68. Additionally, Ms. Porter failed to establish a causal connection between the remaining alleged retaliatory acts— i.e., being the only rescue captain assigned to a cubicle and not having access to a take home car—because these events began to occur in 2009, well before Ms. Porter filed her internal complaint in October of 2010 and her EEOC charge in June of 2011. *See Cotton*, 434 F.3d at 1233.

Ms. Davis has similarly failed to establish a causal connection between either of her protected activities—the internal complaint filed on October 28, 2010 and the EEOC charge filed in June of 2011—and the three alleged retaliatory acts. Specifically, the first write-up occurred on October 26, 2010, two days before her

11

internal complaint, thus belying any causal connection as it preceded both protected activities. *See Cotton*, 434 F.3d at 1233. The write-up and suspension on April 30, 2011, are not enough to establish a causal connection because they preceded the June 2011 EEOC charge and occurred six months after the October of 2010 internal complaint. They were not in "very close" temporal proximity. *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (three-month interval between statutorily protected activity and the adverse employment action is insufficient to establish a causal connection). *See also Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004) ("If there is a substantial delay between the protected expression and the adverse action in the absence of other evidence tending to show causation, the complaint of retaliation fails as a matter of law.").[2]

Therefore, we affirm the district court's rulings as to all of the plaintiffs' Title VII retaliation claims.

## VI

Title VII protects an employee from enduring a hostile work environment due to unlawful harassment or in retaliation for protected activity. *See Harris v. Forklift Systems*, *Inc.*, 510 U.S. 17, 21 (1993). To demonstrate a *prima facie* case of hostile work environment, a plaintiff must show (1) that she belongs to a

---

[2] We recognize that the write-up Ms. Davis received in April of 2011 was prepared in December of 2010, approximately two months after she filed her internal complaint. We nevertheless, conclude that it was not issued in close proximity to her protected activity. *See Thomas*, 506 F.3d at 1364.

protected group; (2) that she was subjected to unwelcome harassment or retaliation; (3) that the harassment or retaliation was based upon a protected characteristic, such as race or sex, or activity; (4) that the harassment or retaliation was sufficiently severe or pervasive to alter the terms and conditions of her employment; and (5) there is a basis for holding her employer liable. *See Miller v. Kenworth of Dotham, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002). If a Title VII plaintiff alleges harassment by coworkers, she must show the employer had either actual or constructive knowledge of the harassment, and failed to take corrective action. *See Watson*, 324 F.3d at 1259. When determining whether the alleged conduct is severe or pervasive, we look to factors like frequency, severity, whether it is physically threatening or humiliating or just a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. *See Miller*, 277 F.3d at 1276.

## A

As an initial matter, the plaintiffs have abandoned their retaliatory gender- and race-based hostile work environment claims because their brief merely recites law but does not apply that law to any facts from their case or identify a particular error in the district court's analysis. *See Greenbriar*, 881 F.2d at 1573 n.6 ("Although [appellant] refers to the district court's dismissal of its amendment in its Statement of the Case in its initial brief, it elaborates no arguments on the merits

13

as to this issue in its initial or reply brief. Accordingly, the issue is deemed waived.").

**B**

The plaintiffs raised both gender- and race-based hostile work environment claims due to harassment. With respect to the gender-based claims, the plaintiffs alleged that (1) only men were offered promotional opportunities, and (2) men spoke openly about not wanting to work for female captains and commented that women should not be firefighters. Regarding the race-based hostile work environment claims, the plaintiffs claimed that African-American women were (1) denied promotions, (2) subjected to rule changes and "nebulous subjective criteria and testing," and (3) had their requests for advancement ignored.

The plaintiffs, however, have not shown that they were subjected to severe or pervasive gender or racial harassment. First, both Ms. Manley and Ms. Porter admitted that they never heard any derogatory comments about women or African-Americans from their co-workers or their supervisors. Second, even though Ms. Davis says she overheard Captains Benalcazar and Sherman express, on two occasions, their desire to not work for a female captain and their opinions that women should not be firefighters, Ms. Davis conceded that she never heard the current chief, Chief O'Brien, Director Miller, or any other co-worker use

14

derogatory language about women.[3]

The plaintiffs offered only conclusory allegations that African-American women were being singled out, subjected to random rule changes, and denied promotions. In fact, the allegations that African-Americans and women were not promoted are belied by the record. For example, Ms. Manley was promoted to rescue captain in 2011, Ms. Porter was promoted to rescue captain in 2008, and Sue Loefller was a battalion chief from November of 2010 until September of 2011, and then became acting EMA Deputy Director. Furthermore, between 2009 and 2012, three other women held positions above battalion chief. Additionally, Ms. Porter's contention—that white males who did not have fire captain experience were promoted to battalion chief, while African-American women who also did not have fire captain experience were denied those promotions—does not support the plaintiffs' harassment claims because those men were promoted before Chief O'Brien's tenure and no similar promotions have occurred since.

---

[3] Ms. Davis testified that a co-worker, Ms. Walls, informed her that former chief, Chief Smith, had stated that, if he had it his way, none of the African-American captains who were promoted—particularly the women—would make it off probation. This testimony, however, "presents a classic 'double hearsay' problem" because neither of the hearsay statements—that of Ms. Walls and Chief Smith—are subject to an exception to the hearsay rule. *See Zaben v. Air Products & Chemicals, Inc.*, 129 F.3d 1453, 1456-57 (11th Cir. 1997). Thus, the district court was correct in not considering that testimony, and neither do we. *See id.* Moreover, even if Chief Smith's statements were admissible, there is no evidence of an actual practice in line with Chief Smith's alleged statements, and there is no connection between Chief Smith's comments and the actions of the current chief, Chief O'Brien. *See Watson*, 324 F.3d at 1259.

The plaintiffs also failed to show that any alleged harassment unreasonably interfered with their performance or that Chief O'Brien was aware of this alleged harassment and did not take action to correct it. Because the plaintiffs did not make out a *prima facie* case of gender and race-based hostile work environment, the district court did not err in granting summary judgment to the Department on those claims.

## VII

For the reasons set forth above, the district court's summary judgment order is affirmed.

**AFFIRMED**.