Jamilia JONES, Plaintiff–Appellant,

v.

ALLSTATE INSURANCE COMPANY, Defendant–Appellee.

No. 16–15628

United States Court of Appeals, Eleventh Circuit.

(September 6, 2017)

Kevin W. Jent, Wiggins Childs Pantazis Fisher & Goldfarb, Birmingham, AL, for Plaintiff–Appellant.

Charles A. Powell, Littler Mendelson, PC, Birmingham, AL, for Defendant–Appellee.

Before WILSON and NEWSOM, Circuit Judges and MORENO,[*] District Judge.

MORENO, District Judge:

Jamilia Jones sued her employer Allstate Insurance Company alleging violations of the Americans with Disabilities Act (ADA), the Family and Medical Leave Act (FMLA) and Title VII's prohibitions on sexual harassment and retaliation. Her failure to prove an adverse employment action defeats her ADA, FMLA and Title VII retaliation claims. Her sexual harassment claims under Title VII were not timely filed. Therefore, the judgment in favor of Allstate Insurance Company is AFFIRMED.

## I. Factual Background

Plaintiff, Jamilia Jones, filed her complaint against her past employer, Allstate Insurance Company under the ADA, FMLA, and for sexual harassment and retaliation under Title VII. Allstate moved for summary judgment and the district court granted the motion on all counts. This appeal ensued.

Jones, a female, worked at Allstate from May 10, 2010 until September 24, 2012, when she claims Allstate constructively discharged her. She worked at the Birmingham, Alabama call center as a claims specialist, which required her to provide customer service over the phone to clients

---

[*] Honorable Federico A. Moreno, United States District Judge for the Southern District of Florida, sitting by designation.

involved in car accidents. Jermaine Johnson became her supervisor in June 2011.

### A. Sexual Harassment

Jones testified that Johnson sexually harassed her from October through December 2011. She provided detailed examples of harassment that occurred until December 2011, including text messages Johnson sent her. In December 2011, Jones spoke to Johnson's supervisor, LaTasha Dawkins, and manager, Ronnie Prine, about Johnson's behavior. In those conversations, Jones was "vague" about what had occurred and was visibly upset. Jones requested Prine transfer her because Johnson was making unwanted remarks and using profanity in her presence. Prine granted the transfer request to another team and her supervisor became Jeremy Head. Despite the transfer, Jones testified that she continued to work in the same room as Johnson because all the claims specialists worked in one big room with different cubicle areas.

Jones knew Allstate had a policy prohibiting sexual harassment and that the company had a Human Resources Department. Jones, however, did not report her claim of sexual harassment until April 23, 2012, when she made a written complaint of sexual harassment against Johnson.

### B. Family and Medical Leave Act Absence

Soon after her December transfer, in January 2012, Jones took medical leave because she was suffering from post-traumatic stress disorder due to her interactions with Johnson. Jones returned from medical leave in April 2012. Upon her return, Jones admits that Johnson did not touch her, text her, ask her to reveal herself, or take pictures of her. Jones testified, however, that Johnson stopped by her cubicle and stared at her minutes at a time

until Head asked him to leave. Jones testified that these staring incidents happened numerous times.

### C. The April 23, 2012 Complaint and Past Complaints

Jones testified that she feared making a sexual harassment complaint against Johnson. She heard through word-of-mouth that complaining would not benefit her as other women had previously complained about him.

Human Resources Director Kimberly Lyn and Ronnie Prine were both aware that in 2009 another female employee, T. Amerson, had made a sexual harassment claim against Johnson. Lyn investigated the complaint and interviewed a witness named Khadijah Powell, who also told Lyn that Johnson had sexually harassed her. While investigating Amerson's and Powell's allegations, Lyn interviewed Johnson, who denied the accusations. At the time, Lyn interviewed Prine, who said he had known Johnson for five years and had not seen his behavior cross the line. Prine felt Johnson was an effective leader and that his supervisors had no knowledge of Johnson acting inappropriately with his subordinates. Lyn dismissed the complaints against Johnson finding that Amerson and Powell had an agenda against Johnson. Because their stories were similar, Lyn found they were not credible. Prior to 2009, there was one other complaint against Johnson in 2004 that was also unsubstantiated. As a result of the 2009 investigation, Allstate required Johnson to attend sexual harassment training.

When Allstate received Jones's April 23, 2012 letter, Lyn began another investigation. She interviewed Jones, Prine, Dawkins, Johnson, Le'Keisha Morton, and Jonita Porter. On May 4, 2012, Lyn interviewed Johnson, who acknowledged sending Jones inappropriate text messages in

November and December 2011. Johnson also acknowledged that he told Jones about the previous sexual harassment investigations. Lyn recommended, and Allstate approved, Johnson's termination effective May 8, 2012.

### D. Jones's Attendance after her Complaint and Resignation

Jones worked two days between her April 23 letter and Johnson's discharge on May 8, 2012. On April 30, 2012, Tabitha Simmons, a manager, met with Jones and counseled her regarding her attendance. Between May 16 and 18, 2012, Jones again failed to show for work or call the attendance line. Jones worked four days in May 2012. She took short-term disability leave in June 2012 and worked just one full-time day in July.

When Jones returned to work on July 9, her doctor recommended a part-time schedule, working four hours per day with a shift starting at 10 am for two hours, a lunch break, and then another two-hour shift. Allstate approved the part-time schedule. When the doctor recommended that Jones resume full-time work, Allstate put her on a full-time schedule.

Jones testified that she required breaks upon returning to work. She initially testified that Allstate did not comply with her doctor's requests to give her breaks. She later testified that she took five to ten minute breaks when allowed. She could not identify a specific date that Head, her supervisor, denied her a break. Head also did not discipline her at any point for taking a break. Jones had the ability to put a code on her phone to designate herself as unavailable.

On August 22, 2012, Jones interrupted a meeting between Allstate supervisor Erika Blanks and another Allstate employee. During this meeting, Jones disclosed to Blanks the contents of her sexual harass-ment claim, announced she was getting a lawyer, and resigning. Jones testified that her co-workers would not talk to her for fear of losing their jobs. The few people who did speak to her always had a witness present to avoid being alone with her. On September 10, 2012, Jones sent Head an email tendering her resignation effective two weeks later on September 24, 2012. Jones did not go to work after September 10, 2012. Allstate paid her for the two additional weeks even though Jones did not work.

## II. Legal Standard

We review a district court's order granting summary judgment de novo, applying the same legal standards as the district court. Harris v. H & W Contracting Co., 102 F.3d 516, 518 (11th Cir. 1996). The Court reviews the record and all inferences drawn in the light most favorable to the non-moving party. Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992).

## III. Legal Analysis

A core element of every employment discrimination claim is whether the employee suffered an adverse employment action. Jones claims she suffered two adverse actions, that Allstate constructively discharged her and that Allstate did not provide her with sufficient breaks upon her return from medical leave. The record establishes neither a constructive discharge nor insufficient breaks and as such, the district court correctly granted summary judgment on the ADA, FMLA, and Title VII retaliation claims.

Despite Jones's failure to establish an adverse action, the district court nevertheless decided that Jones could not proceed past summary judgment because her case presented alternative claims under the various employment discrimination laws.

The district court also extensively analyzed the standard of causation for an FMLA retaliation claim, which requires a plaintiff show she engaged in protected activity and suffered an adverse action that was causally related to that activity. Surtain v. Hamlin Terrace Found., Inc., 789 F.3d 1239, 1247 (11th Cir. 2015). The district court determined that the FMLA's causation standard requires a plaintiff to make a "but-for" showing that an adverse action was causally related to the protected activity (i.e. plaintiff's medical leave). Because we find that Jones fails to prove an adverse action, we need not decide whether the district court erred in disallowing alternative pleading or in applying a "but-for" causation standard to her FMLA retaliation claim.

### A. Constructive Discharge

■ On appeal, Jones claims there is a question of fact as to whether she suffered a constructive discharge, which is an adverse action under the FMLA, the ADA, and Title VII. To prove a case of constructive discharge, an employee must show that her "working conditions were so intolerable that a reasonable person in [her] position would be compelled to resign." Morgan v. Ford, 6 F.3d 750, 755 (11th Cir. 1993) (quoting Steele v. Offshore Shipbuilding, Inc., 867 F.2d 1311, 1317 (11th Cir. 1989)). "[F]or a constructive discharge claim to present a jury issue and thereby survive summary judgment, the plaintiff must produce substantial evidence that conditions were intolerable." Akins v. Fulton Cty., 420 F.3d 1293, 1302 (11th Cir. 2005) (citing Brochu v. City of Riviera Beach, 304 F.3d 1144, 1155 (11th Cir. 2002)).

As evidence of the intolerable working conditions, Jones points to Johnson's treatment of her. The record, however, shows that Allstate terminated Johnson's employment within two weeks of Jones's complaint, and Jones did not resign until four months later. Jones also argues her co-workers' silent treatment upon her return from leave supports her constructive discharge claim. She claims they did not speak to her for fear of losing their jobs, and if they did, it was with witnesses present. The record also shows that Jones worked two days in May 2012 and was out the month of June. She worked one full-time day in July. Allstate then placed her on a part-time schedule at her doctor's request for some time. When her doctor allowed, Allstate returned her to a full-time schedule. By August 22, 2012, Jones told Blanks she would be resigning. Her absences continued and she provided her resignation on September 10, 2012. Even if she returned to work full-time sometime in the late summer of 2012, she still would have been there only six to eight weeks before resigning. And during that time, her only complaint is that her co-workers did not speak to her and that she could not take enough breaks. These facts simply do not amount to intolerable working conditions. See Virgo v. Riviera Beach Assocs. Ltd., 30 F.3d 1350, 1363 (11th Cir. 1994) ("A claim for constructive discharge requires the employee to demonstrate that the work environment and conditions were so unbearable that a reasonable person in that person's position would be compelled to resign.").

Moreover, Plaintiff's decision to voluntarily resign in the face of possible termination is not a constructive discharge. A resignation is voluntary as long as the plaintiff had a choice, even if the alternatives are unpleasant. Hargray v. City of Hallandale, 57 F.3d 1560, 1568 (11th Cir. 1995) (stating that where plaintiff has a choice, she can "stand pat and fight"). Jones had a choice, and she chose to voluntarily resign.

*B. Americans with Disabilities Act Claim*

 To establish a *prima facie* case under the ADA, a plaintiff must show "(1) a disability, (2) that she was otherwise qualified to perform the job, and (3) that she was discriminated against based upon the disability." Cleveland v. Home Shopping Network, Inc., 369 F.3d 1189, 1193 (11th Cir. 2004). A "qualified individual" is defined as an 'individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Jones does not appeal the district court's finding that she was not "qualified" under the ADA because she admitted attendance was required for her job, and she worked very few days upon returning from leave. Jones has waived this issue. See Carmichael v. Kellogg, Brown, & Root Servs., 572 F.3d 1271, 1283 (11th Cir. 2009).

 Even if Jones contested this finding and was "qualified" under the ADA, the record does not show she was discriminated against based upon her post-traumatic stress disorder. As evidence of discrimination, Jones says Allstate did not give her sufficient breaks and that she was constructively discharged. Because we have already found the record does not suffice to show a constructive discharge, we will examine whether Allstate discriminated by not allowing her sufficient breaks.

This record does not show that Allstate refused Jones any breaks. Jones could not identify one instance where Head denied her a break, nor could she identify any instance where Allstate disciplined her for taking a break. The record shows she took 5 to 10–minute breaks. Moreover, Allstate accommodated her part-time schedule request. The record evidence does not support her claim that she suffered discrimi-

nation due to her post-traumatic stress disorder. As such, the district court properly granted summary judgment on the ADA claim.

*C. Timeliness of Sexual Harassment Claims*

Liability under Title VII depends upon the timely filing of an EEOC charge setting forth the conduct allegedly inconsistent with Title VII. See Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1317 (11th Cir. 2001). Alabama is a non-deferral state, and the deadline for filing an EEOC charge of discrimination is 180 days after the alleged discriminatory act. Ledbetter v. Goodyear Tire & Rubber Co., Inc., 421 F.3d 1169, 1178 (11th Cir. 2005). The district court held that Jones's claim of supervisor sexual harassment was time-barred because Johnson ceased being her supervisor in December 2011, and Johnson did not file her first EEOC charge until August 29, 2012. To be timely, the hostile work environment had to exist as of March 2, 2012.

The Supreme Court has "instructed that a hostile work environment, although comprised of a series of separate acts, constitutes one 'unlawful employment practice' and so long as one act contributing to the claim occurs within the filing period, 'the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.'" Watson v. Blue Circle, Inc., 324 F.3d 1252, 1258 (11th Cir. 2003) (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002)). A series of harassing conduct comprises the same hostile work environment where the "pre- and post-limitations period incidents involve[d] the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers." Morgan, 536 U.S. at 120, 122 S.Ct. 2061.

"[A] Title VII plaintiff cannot recover for acts that occurred before the filing period if such acts are no longer part of the same hostile work environment claim because of 'certain intervening actions' of the employer." Watson, 324 F.3d at 1258; Stewart v. Miss. Transp. Comm'n, 586 F.3d 321, 328 (5th Cir. 2009) ("intervening action . . . will sever the acts that preceded it from those subsequent to it, precluding liability for preceding acts outside the filing window"). In Watson, the plaintiff complained a co-worker named Peters displayed lewd photos in her presence. Management confronted Peters and asked him to dispose of the pornography, which he did. This Court found the management action was an intervening one rendering Peters's conduct no longer part of the plaintiff's hostile work environment claim. Id. at 1259.

■ Like Watson, Jones complained she and Johnson were not getting along in December 2011. Allstate promptly transferred her to another team under another supervisor. Transferring Jones to another team is a sufficiently intervening act severing the initial hostile work environment from the subsequent one. See Stewart, 586 F.3d at 329 (reassigning plaintiff to new supervisor constitutes sufficient intervening action, even though harassment later resumed). The staring alleged by Jones cannot overcome Allstate's intervening action. See, e.g., Holmes v. Utah, 483 F.3d 1057, 1064 (10th Cir. 2007) (finding transfer constituted intervening act, rendering inappropriate hug she experienced after transfer as not part of the initial hostile working environment). In any event, the staring that occurred in April 2012 does not rise to the level of severe or pervasive conduct sufficient to alter the terms or conditions of Jones's employment to create a hostile work environment. Mendoza v. Borden, Inc., 195 F.3d 1238, 1248 (11th Cir. 1999).

## D. The Ellerth/Faragher Defense

■ Even though the district court found her claim of supervisor harassment untimely, it nevertheless evaluated whether her supervisor harassment claim survived the defense established in Faragher v. City of Boca Raton, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) and Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). Under Faragher/Ellerth, employers may be held vicariously liable for the sexual harassment of a plaintiff by a "supervisor with immediate (or successively higher) authority over the employee." Faragher, 524 U.S. at 807, 118 S.Ct. 2275; Ellerth, 524 U.S. at 762–63, 118 S.Ct. 2257. However, an employer may escape liability by establishing "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Faragher, 524 U.S. at 807, 118 S.Ct. 2275; Ellerth, 524 U.S. at 765, 118 S.Ct. 2257. An employer may demonstrate reasonable care to prevent sexual harassment by showing the development of "an effective and comprehensive anti-sexual harassment policy," which is "thoroughly disseminated," and to which the employer "demonstrate[s] a commitment to adhering." Farley v. Am. Cast Iron Pipe Co., 115 F.3d 1548, 1554 (11th Cir. 1997).

Allstate had a policy prohibiting sexual harassment and a Human Resources Department. Allstate's policy allows employees to report incidents to a manager or to human resources. Although her harassment began in October 2011, Jones did not report the sexual harassment until April 23, 2012. In the interim, she spoke to Dawkins and Prine in December 2011. Jones told Dawkins she and Johnson were

not getting along. Without specific detail, Jones vaguely told Prine that Johnson made unwanted remarks to her and used profanity. Prine granted Jones's request to transfer to another supervisor. Jones did not tell either manager about the incidents of sexual harassment that occurred between October and November 2011. Unequivocally, once Jones reported the harassment on April 23, 2012, Allstate immediately began an investigation and terminated Johnson two weeks later.

Allstate's anti-harassment policy, Plaintiff's failure to avail herself of that policy for months, and Allstate's swift investigation and termination of Johnson establish the Faragher/Ellerth defense in this case. See Madray v. Publix Supermarkets, Inc., 208 F.3d 1290, 1300 (11th Cir. 2000) ("[O]nce an employer has promulgated an effective anti-harassment policy and disseminated that policy and associated procedures to its employees, then 'it is incumbent upon the employees to utilize the procedural mechanisms established by the company specifically to address problems and grievances.'") (quoting Farley, 115 F.3d at 1554); Baldwin v. Blue Cross/Blue Shield of Ala., 480 F.3d 1287, 1306–07 (11th Cir. 2007) (stating that an employee's failure to use an employer's procedures or take advantage of preventive or corrective measures establishes the second element of the Faragher defense).

Jones contends the Faragher/Ellerth defense is not established in this case because Allstate had notice that Johnson had sexually harassed two women in 2009 and one in 2005, and rendered those claims unsubstantiated. Jones asserts those human resources investigations were lacking, and only emboldened Johnson to continue sexually harassing his subordinates. The record, however, shows that Allstate did investigate those claims, and found them to be unsubstantiated after Human Resources manager Lyn interviewed the witnesses. Although the claims were found to be unsubstantiated, Allstate sent Johnson to training. Therefore, Jones's argument does not preclude application of the Faragher/Ellerth defense.

Finally, Jones contends that Allstate should have immediately suspended Johnson during the May 2012 investigation. It is well-settled, however, that "an employer need not act instantaneously, but must act in a reasonably prompt manner to respond to the employee's complaint." Frederick v. Sprint/United Mgmt. Co., 246 F.3d 1305, 1314 (11th Cir. 2001). This Court finds that Allstate's actions in the two-week period were sufficiently prompt to comply with its legal obligation.

*E. Co-worker Sexual Harassment Claim*

▮ Even if we agreed with Jones that the staring that occurred in April 2012 was sufficiently severe to establish a claim of sexual harassment by a co-worker, the record shows Allstate did not have notice, which also defeats Jones's claim. When "the alleged harassment is committed by co-workers ... a Title VII plaintiff must show that the employer either knew (actual notice) or should have known (constructive notice) of the harassment and failed to take immediate and appropriate corrective action." Watson, 324 F.3d at 1259.

Jones argues her statements to Dawkins and Prine gave Allstate both actual and constructive notice of her sexual harassment complaint, especially because Prine knew about Amerson's sexual harassment complaint against Johnson in 2009. We disagree.

The record shows Jones told Dawkins that she and Johnson did not get along. Without specific detail, she told Prine "vaguely" that Johnson made unwanted remarks, and used profanity in her presence. She requested Prine transfer her and she did not request an investigation. Prine then transferred her. Certainly, an

employee that is sexually harassed may be upset and say that a supervisor uses profanity and unwanted remarks. This scenario can also manifest when an employee is simply not getting along with her supervisor. That Prine knew of the prior allegations of sexual harassment is likewise insufficient to put him on constructive notice, where, as here, Human Resources investigated those claims and found them unsubstantiated. Moreover, Prine took "immediate corrective action" by transferring Jones to another supervisor. Based on the information Jones gave him, he was not on constructive notice that an investigation for sexual harassment was warranted.[1]

The record certainly establishes that once Jones gave Allstate actual notice of the sexual harassment on April 23, 2012, Allstate took immediate corrective action, which precludes liability on her co-worker sexual harassment claim.

AFFIRMED.

---

1. To prove negligence, Jones must also show actual or constructive notice. Based on the above-analysis, Plaintiff's negligence claim against Allstate also fails.